et al. Oral argument on T.C. 15 minutes per plaintiff. 15 minutes to hear our defendants. Leo Bierman.  Good morning. All of your honors. I'm Leo Bierman of the Tennessee Bar, the court please, and I represent seven plaintiffs, some of whom are African Americans, some of whom are not, who assert that the Tennessee procedure for consolidating city and county government violates the 14th Amendment, Equal Protection Clause, and the Voting Rights Act, because it calls for a dual majority vote, namely, a vote of the citizens in the principal city of the county, that would be Memphis, Tennessee, in the county that we're talking about, Shelby County, and the majority vote of all of the rest of the citizens outside of Memphis but in Shelby County. Now what does that mean? That means, if the court please, that as I'm going to try to develop, this violates serious equal protection principles. For one thing. Is it violated in all counties or only in Shelby County? Well, that's a good question, and the answer is that it may not violate it. On the 14th Amendment, in my judgment, it would violate it in every county. On the voting rights issue, it would violate it in Shelby County, which is the only one. The voting rights challenge isn't as applied to Shelby County. The Fourth Amendment, equal protection, though, there's a lot of evidence in there that we have these disputed affidavits by the supervisors of the other municipalities, and the issue there is how similar the interests are of the county residents to the city residents. Would not that vary in other counties besides Shelby? It might, but let me raise... So how could a ruling here on the equal protection apply to all the counties in the state of Tennessee, if it's fact-specific? And it sounds like it's fact-specific because of the motion to strike the affidavits as to certain facts here. We made that motion, and as I say, it may or may not apply to every other county, but in my judgment, the county I'm responsible for here... So the decision is limited to Shelby County, or it's statewide in Tennessee? I think the 14th Amendment issue, Your Honor, would be statewide. Then why do we have to go through the factual things? There's a lot of factual issues in the 14th Amendment. Well, one reason is that, let me give an example and illustrate. When we vote on this issue in Shelby County, my vote counts one. I'm a citizen of Memphis. My vote counts one. One person, one vote. When my good friend, Mr. Mark Norris over there at the end of the table, who lives in Shelby County, but not in Memphis, votes, his vote counts 2.3. Now, I suggest that that can't meet Baker versus Carr. It can't meet Reynolds versus Sims, where everybody's vote is entitled to the same weight. And his position is going to be that the town of Lockport case justifies that because of differing interests. I tell the court that the town of Lockport case is not on point, simply because in that case, as Your Honors will recall, it was a home rule issue in New York State. And in New York State, the issue in that case was that all of the cities in a county voted as a group, and all of the people not in the cities of that county voted as a group. So that was a dual majority issue. Now, and the court said, well there could be differing interests. Those are governmental interests, and they could be differing interests. So we're going to carve out an exception to the 14th Amendment, equal protection, and Baker versus Carr issue because of that. In our case, in my case, the intervening defendants are all cities, but they are in Shelby County. So we don't have the distinction between city versus non-city. We have in Shelby County, Memphis on one side, and other cities. And so I suggest on the other side, and I suggest to you therefore, that the differing interests argument is really pretextual. And that it cannot apply, and therefore the town of Lockport case, respectfully, is not on point. If Lockport were distinguishable, do you have a case anywhere that has adopted your position? Well, it depends on which position Your Honors are referring to. Your position that the dual majority voting scheme required by the Tennessee Constitution for consolidation elections violates one man vote, one vote. I don't recall right off hand that I do. I only can say, except for, obviously, Baker versus Carr, Reynolds versus Sims, all of which assert that A lot of states have this dual majority. Some do. I thought I read in the briefs maybe 30 or 35 states do. Several do. None of them have been challenged. I mean, Baker versus Carr has been out there a long time. It has indeed. It has indeed. Do you think that that's significant, that this has never come up again? And maybe one of the reasons it hasn't come up, because we have peculiar circumstances in this case, which bring in the Voting Rights Act, and which combined, in my judgment, raise a serious question before this Court. Let me make my point, if I can. Memphis has 73% of the population of Shelby County. 73%. And Memphis is predominantly African American citizenship. As of 2010? Or as of this date? Both. Both. I believe the record reflects both. That's another concern I have with this case, is the demographics of the county and the city are changeable and will be changed. And I guess we look at the 2010 and don't look at anything further. Well, that's right. And at that time, not only was Memphis predominantly African American, but it's important to note that the area outside of Memphis, in Shelby County, was no more or less than, to be precise, less than 30% African American. Now what does that mean? That means, not only does Mr. Norris' vote count 2.3 times more than mine, but it also means that 15% of the voters of Shelby County can veto, in effect, a sizable majority of votes in Memphis, Tennessee, on this question. Let me talk about what to me is the elephant in the room. I'm sorry, sir. Let me talk about what to me is the elephant in the room, and that is, if I understand the record correctly, a straight majority of all those who voted in this referendum, voted it down. In other words, if the court had issued an injunction and ordered this election to be held in the way that you think it should have been held, the referendum would have lost. Correct? It would have passed in the city, it would have lost in the county, but overall, your honor, is correct. Then why isn't this moved? I have a real problem with the idea that this is so substantial and so significant with regard to the likelihood of repetition in evading future review. Again, if I read the record correctly, one of the problems you have in looking for comparable situations to point to is that this is unique. At least since the 60s, there hasn't been a referendum of this sort. You haven't had combined sewer districts or water districts or fire or police or economic zones. Nothing, as I understand, on a countywide basis where there might have been this concern. Honestly, I know it's not arguing the breeze, but it jumped out at me, and why am I wrong to be concerned about... Let me say one other thing. So we understand exactly how I'm reading this. It's one thing for a federal court to do something with a state common law doctrine or whatever, if it doesn't apply. It's another thing when we declare that a statute enacted by the legislature of the state is unconstitutional under the federal constitution. But to overturn a state constitutional provision... Maybe it's just myself and my concerns about exercising the awesome federal power when asked to overturn for the first time ever a state constitution when the simple truth is if you had won and this election had been held as the way you wanted it to have been held, the referendum would have failed. So why does it matter whether there's racial concerns and all of that, which are at the core of the case, I think, and I understand that. Why isn't this moot? Passable elephants, Your Honor. Let me try to tame both of them, if I can. On the mootness issue, that was raised by the defendants and the court rejected it. And on the theory and on the doctrine that this court has applied before and have other courts, that this issue is going to reoccur or is likely to reoccur and it will. It hasn't. I mean, what's 50 years ago? Am I correct? Maybe I misread it. I can't remember the exact date. This is the third one that's come up. It's 43 years ago. The last one was 1971. Yeah, I think that's right. It's been 43 years and to have it reoccur, both the city commission of the city of Memphis and the county commission of the Shelby County would have to approve another resolution for a charter commission. And so to reoccur, we have to say that that is subject to repetition. It hasn't happened in 43 years. And although it's theoretically possible that the county commissioners of Shelby County might render another resolution in view of the overwhelming defeat of 83%, I think politically, I wouldn't expect it, that's all. Isn't this different from our normal election cases where we relax the repetition yet evading review standards because there are elections every two years, every four years, that even if this candidate didn't qualify this time, two years from now, there's probably going to be another candidate who may not qualify at the same time. And even though these guys didn't get their 50,000 signatures, maybe next time they will get their 50,000 signatures to put it on because they're still active. Here you have to rely on the political bodies of the city of Memphis and the county to even get this thing rolling again. And it's hard for me to say that this is like all those other election cases which occur on a periodic, regular, frequent basis, that this is a very infrequent, unusual, and, you know, it's been 43 years since it happened before. Well, all I can say in response to those is that I think it will recur, and I think we're entitled to the opportunity to have it recur. Any evidence that it's going to reoccur? Sir? Any evidence that it would reoccur? Well, I think... I mean, it's theoretically possible, but, I mean, any... In the record, I think the only thing that the record reflects is the enthusiasm of trying to put this in. I can't tell, Your Honor. It would be inappropriate for me to tell, Your Honor, what people have said to me, and otherwise that's not in the record.  Particularly, particularly since we now have a racial majority, a racial minority, who is a majority in the city of Memphis, and I think you're going to find that this issue, that's a reasonable assumption that the issue will come up, keeping in mind also that racial polarized voting in Shelby County is acknowledged by the defendants as well as the plaintiffs. There is no one in this case that denies that there is racial polarized voting in Shelby County, and that combination, those combinations raise this point. We have a racial minority who is a majority, or which is a majority, in the city of Memphis. The problem I have with that on the Voting Rights Act is that we would decide the case as if we had an actual case in controversy as of 2010, and what are the racial dynamics and the factors as of 2010. When and if this ever comes up again, it may be 20 years, it may be 30 years, say in 2030, our advisory opinion in 2010, which was based upon the demographics of the city of Memphis, is going to control the referendum that occurs in 2030, and the whole demographics may have just totally changed. And it's hard for me to say that this advisory opinion ought to apply to a possibility of a referendum so far out in the future when all the factors that we ruled upon may or may have changed. Well, respectfully, Your Honor, I don't think it would be an advisory opinion if this court rules that the operating statute 7-2-106 of the Tennessee Code precludes in Shelby County the use of the dual majority vote. And if Your Honors rule that way, I don't think that's an advisory opinion. I think what that will do is to encourage a rapid and sooner rather than later effort to consolidate once again. And I don't think we should speculate that it won't happen. I think it's more likely based on the undisputed evidence on all sides that we have racially polarized voting, which obviously depresses the vote on this issue in Memphis. Mr. Behrman, why don't we hear from the appellees and you'll have your rebuttal. I'm sorry. Oh, no, we've asked you a lot of questions. It's okay. Okay. Thank you. Sure. Good morning, Your Honors. I'm Janet Kleinfelter with the Tennessee Attorney General's Office, and I'm here on behalf of the defendants, the Attorney General, the Secretary of State, and the Shelby County Election Commission. Your Honors, counsel for the intervening defendants and I, we've agreed to split the time. I'm going to take eight minutes and he's going to take seven minutes. You've hit upon the argument that we made to the district court, in which we still agree is the right argument, and that this case is moved. Why didn't you raise it on appeal? I mean, I wish you would have. I wish I had to. And I guess, Your Honor, we were so focused upon the actual issues that were addressed in the summary judgment motions that we overlooked raising the issue on appeal. We can always raise the issue of our subject matter jurisdiction. That is correct, Your Honor. And that would certainly be a grounds for finding the court does not have subject matter jurisdiction. And I think Your Honor has absolutely hit upon the correct points in that this is not your usual election case where you have elections every two, every four years. You know, this provision was put in the Tennessee Constitution in 1953. Prior to that time, there was no ability for cities and counties to consolidate. It doesn't have to be an ability, does it? I mean, is there a federal constitutional right that people can consolidate their municipalities? I mean, can we? Absolutely not. I mean, a state of Tennessee could have no consolidation. That is correct. And, in fact, it did not have consolidation. That is the whole reason why in the limited constitutional convention of 1953, the delegates came up with the resolution that was ultimately voted on and approved by the people in a referendum election in November of 1953. To allow this. And contrary to what counsel just said, this court cannot just strike down the statutory provision. You would also have to strike down the constitutional provision because the constitutional provision says, specifically says, that while the General Assembly cannot provide for consolidation through legislative action, only, only if there is this dual majority vote requirement. And so, in essence, if the court were to strike down and say that it is unconstitutional, you are actually back to pre-1953 where there is no ability to consolidate because at that point there would be nothing in either the state constitution or state statutes authorizing consolidation and there is no federal right of consolidation. The remedy they are asking for is us to say that it is unconstitutional in that it has dual majorities.  and say that you could have consolidation if there is a majority of the entire county, the county residents and the city combined. And you are saying that that wouldn't be the remedy? The remedy would be to throw the whole thing out? I think that is the only way that you can do it. I think, again, as Judge Carr pointed out. There is no severability clause. There is no severability clause, absolutely. There is no ability for this court to come in and rewrite the constitution to say. They wouldn't have a remedy even if they won. Well, their remedy would be that they could not consolidate. Empiric victory. Exactly, Your Honor, exactly. We've got a great case for the case books, but in real life. They want to consolidate. Well, and Your Honor, I would suggest that actually the evidence shows that they do not want to consolidate. In fact, the evidence reflects that the majority of the African-Americans residing in the city of Memphis voted overwhelmingly against consolidation. The plaintiffs here are in favor of the consolidation, aren't they? No? The plaintiffs, but they are seven people out of thousands of people in the city of Memphis and Shelby County. They still have standing, though, don't they? They still have standing. But, again, it goes back to this issue of mootness because I don't think this is one that is capable of repetition, that it's reasonable to assume that given since 1971 it has not occurred and given the way that the vote occurred in 2010, that you had an overwhelming majority of the African-Americans in the city of Memphis vote against consolidation. I would suggest if you're going to look at any sort of... If there's block voting of any kind. Excuse me? If there's block voting. If there's block voting, it actually demonstrates, the evidence demonstrates, that the minorities actually were successful in their position here, that they wanted, they were opposed to consolidation, they were successful in getting consolidation voted down. And, Your Honor, that actually, I would suggest, that if you did away with the dual majority vote requirement, you could have the situation which this court noted in the Board of County Education versus the Shelby County Board of Education case that counsel actually cites in the reply brief, that you could result in dilution of the African-American power in the city of Memphis as a result of... Because currently African-Americans comprise a supermajority of the population in the city of Memphis. But if you were to consolidate, that supermajority goes to a bare majority. And so their voting power, it would actually be diluted as a result of consolidation. The effect of their voting power. Yes, the effect. And that is something that the courts have looked at. And, in fact, would be a reason to say to not allow consolidation. And it's another reason why I think it is not reasonable to assume that this is likely to reoccur in the future. The only other point I want to make that Your Honor's raised with respect to is to say, essentially, is this a facial challenge or is it an as-applied challenge? Clearly, under the Voting Rights Act, it's an as-applied challenge with just respect to Shelby County. But plaintiffs have made a facial challenge to the constitutional and statutory provisions under the Equal Protection Clause. And as Your Honor said, well, why do we need to get into facts? And I don't think that the district court, in making its decision, really got into the facts. I think what the court said was, is that the test here is whether the state could legitimately view interests between city and county residents, voters, differently to justify the distinction between the two. And then said, and what we have here in Shelby County, facts about Shelby County, is a basis for the state, what the state might have looked at, could have looked at, to say, yes, there are definitely differing interests between the city and the county. You don't look at the specifics of Shelby County, do you? No, but I think what the district court was saying is, here's something, it's essentially saying, here's empirical evidence that the state was not required to demonstrate on a rational basis standard, which is what we're dealing with here. But we actually have empirical evidence in the record that the state could have looked at to say, here's why the interests between city and county are different. But you don't even have to go to that, you can go to the legislative history, you can go to the comments from the Constitutional Convention that clearly reflect that the interests as viewed by the delegates and as viewed by the state between city and county are very different. My needle is stuck in the same groove. Is the judge's determination that this was capable of repetition, but potentially evasive of review, is that a factual finding, a mixed factual or a law? You haven't thought about it. I think to some extent it's a mixed, there was some evidence in the record in which I think there was maybe an affidavit or a declaration from someone with the city of Memphis or who had been involved in the consolidation effort in 2010 who said, oh, we really want to do this again and we're going to work on doing this again. It's not up to them. Unlike a citizen petition where the citizens can go out and get 50,000 signatures and get it back on the ballot, if you have a citizen group that said, oh, we lost once and we're going to go out and do it again, well, if they did it once they're probably going to do it again. But here it's not up to the citizens that are interested in it, it's up to the political bodies, the representatives of the City Commission of Memphis and the Shelby County Commissioners, right? That's correct. If there's an indication that the county commissioners and the city commissioners are going to bring this up again, that would be different than some citizen, well, I sure like to have them take it up again. That is what the district court relied upon in his ruling in denying our motion to dismiss on the basis that it was moved. He cited two of those declarations to say, no, there's evidence in the record to demonstrate that it is capable of repetition. But we would entirely agree with Your Honor that given the way it is set up under the statute, that simply because you have an organization that was working towards or said we're working towards consolidation, that's not sufficient. And I would note, you know, that was done four years ago. We're actually almost into 2015. We're five years later and there's been no indication whatsoever that consolidation is being sought. I'm not sure that evidence would even be admissible on relevance grounds for the reasons Judge Griffin has just pointed out. They've got no say in what happens next. That's correct. So therefore, why should we hear them say anything on that subject? That's correct. Y'all are telling me I didn't do my job right. But we would ask that your court affirm the decision of the trial court. Thank you very much. Okay, thank you. May it please the court, I'm Mark Norris and I represent the intervening defendants. And we had divided our time, but I lost track of the timer here, so I'll try to be brief. As an initial matter, a procedural one, we intervened on behalf of the four towns or cities after the court had ruled on the motion to dismiss, after he denied the motion and stated this was capable of repetition. It was at that point, and for that reason we thought it would be ruled moot, that we decided we had separate and distinguishable interests in the municipalities and should intervene. And that is why we did. And initially the court denied our motion to intervene, but upon reconsideration granted it. As I've listened to the arguments, I thought how best to help the court focus on another specific fact. The court has it right in terms of the posture of this. What has been so vexatious throughout is that Mr. Bierman's argument to us always seems to turn equal protection in the voting rights context on its head. It turns it upside down. And here's what I mean by that. The court also ruled when we were allowed to intervene that we were only to talk about residency based, not race based. And that's another reason I want Ms. Kleinfelter to go first. So let's just look at it in terms of the residency based claims. Bear in mind, please, that as separate relevant geopolitical entities, the municipalities in Tennessee have the right to vote on whether they want to form their own municipal school systems. And if they determine that they do wish to do so, then they have the right to hold elections, to elect the commissioners to those municipal school systems. And also they have the right to determine by vote, a referendum, whether to dissolve their municipal school systems. And we have municipal school systems across the state. We also have six municipal school systems in Shelby County. But this is of statewide application. Consider, if you will, the appellant's position that although the municipalities have a distinct right to vote whether to form a school system, under their theory of the case, were there to be a referendum on consolidation and were it to pass in this homogenized vote, one vote countywide, by operation of law, that would dissolve the municipalities' school systems, depriving them of the very right which they were afforded and denying them their equal protection. Baker v. Carr has been mentioned several times and the Burson case. I actually knew Mr. Baker. I had the opportunity to meet him when I served on the Shelby County Commission. Also when I served on the Shelby County Commission, I was actively involved in the facts that led to the Burson case. Shelby County Board of Commissioners v. Burson. Our task at that time was to draw, under the Education Improvement Act, new school districts in Shelby County. And the question was, how should we do that? Do we draw districts countywide, including the city of Memphis? Or do we draw the districts outside the city only? And the court concluded below, and the Court of Appeals affirmed, that to draw the school districts countywide would in effect so dilute the votes of the county residents who had a distinct and separate right to their school system as to render their vote void. So it's not the 2.3 or 2.7 in the county that is depriving the city of Memphis. You would have the situation where the city of Memphis and the voters therein would deprive the citizens of their individual, independent, distinct rights in their municipalities outside the city. As you know, Reynolds v. Carr, all the way up to the Gray case, you can deprive people of their right to vote in several ways, denying them equal protection by taking their right to vote, or by so debasing it, or diluting it, that you deny them equal protection under the law. And under the appellant's theory of this case, that is what would happen. And for that reason, we're asking the court to uphold the opinion. Thank you. Thank you. Mr. Bierman? Thank you, Your Honor. First, let me acknowledge the presence of an associate in my firm, Eric Setterlin. He's been an internist for Judge Julia Gibbons and a clerk for Judge Vescovo, a magistrate for Judge Vescovo in the Western District. I didn't want to let this time go by without acknowledging him. I certainly appreciate that. The school system issue that Mr. Norris raises is, again, I suggest, pretextual. The school system was taken out of the charter when this issue came up because it was so controversial. And it's really not a fair issue to argue before this court. Do the citizens, Your Honor, have no say? I say that the citizens do. They have standing to raise this. Somebody has to initiate this effort to the city and county commission. Going back to the school district, if this were to reoccur and the city and the county decided to do a new charter commission, the proposed charter could be different than this one, right? It could be. So if it reoccurred, it may reoccur on different grounds. Is that right? Going back to the mootness question, capable of repetition but evading could be a moving target here because we don't know what a new charter commission would come up with as a charter, right? That issue. So doesn't that go to the mootness issue of why decide this? One thing, that can be taken care of under the provisions of 7-2-106, which provides for certain municipalities within the county but not the principal city to, in effect, opt out or to have its government provisions set aside or remain in existence if there is consolidation. So there are matters that will allow that under the provisions of 7-2-106 to occur. Further, we need to keep in mind that the Tennessee Constitution, I understand what I'm asking when I'm asking a court. You're audacious. The Tennessee Constitution talks only about consolidation and dual majority votes. It is the principal city issue in the provisions of the enabling statute, which is not mentioned in the amendment itself, which is causing the serious issue of Voting Rights Act and 14th Amendment concerns that I'm raising here. So this court can act to enjoin a provision of the Tennessee Code without trampling upon a provision of the Constitution. So you would request that we act and just prohibit all consolidations from occurring? Sir? Is that the remedy you would have us do? What I'm asking the court to do is simply to enjoin the dual voting provision as to Shelby County. Okay, and then rewrite it so it's the majority of all voters that voted? I don't think Your Honor needs to rewrite it. If the issue comes up, it's going to be a majority of everybody in the county. Well, I mean, if we declare it unconstitutional, don't we throw it out, the whole thing? No, you can declare unconstitutional that aspect, that aspect which calls for the dual majority vote as to Shelby County. You can enjoin it as to Shelby County without it applying to the rest of the state. And if I can take one more second, because I see it says stop, on the question of recurrence and the mootness, I urge Your Honor not to, even the defendants chose not to waive that question. And when His Honor rules that he's going to consider it because it is likely to occur, or recur I think is the proper phrase, and because there are affidavits in the record that suggest that. It seems to me that unless Your Honor is prepared to find that that's clearly erroneous, which I think would be the standard, then I think the recurrence is valid and should allow this issue to stay before the court. Well, candidly, when you talk about, with regard to the Constitution, the suggestion you just made strikes me as being troublesome because I think you're asking for sort of a piecemeal outcome rather than what I understood was the broader based outcome. And I think that simply makes, it gives me even further reason by which I can't say time out. Unless we really need to do this because of the likelihood of repetition and the impact ultimately upon, the disproportionate impact upon white and black voting rights. But to go part way, all of a sudden it's going to result in a decision, we agree with you, that is going to create more problems down the road rather than fix this one. I understand Your Honor's concern. I understand the significance of my asking that. But I also agree with what Your Honor suggested, unless we really need to do that. And my suggestion and assertion strongly is that this court really does need to do this because people's rights are being affected and trampled upon. And it's not only not fair, it's in my judgment, as we assert, not equally protective and not legal under the Voting Rights Act. Let me only... What could be more serious than voting? I could not agree more. No. As President of Ohio, we have a lot of voting rights cases. I've had some. The courts had to review some of my, grade some of my papers in that regard. And I think it's fair to say I believe, if you read my cases and opinions, both those that the courts agreed with and not, it would be difficult to find somebody who feels himself more compelled, more jealously and carefully to guard the right to vote. I hope Your Honor knows that I'm not suggesting otherwise. No, no, I'm not at all. But my point simply is, nonetheless, in this case, I've expressed the concerns, I've raised them, and we'll be talking about them in conference. Thank you, Mr. Behrman and counsel, for your arguments today. We very much appreciate them, understand the gravity of the issues and the importance of them, and we thank you for your arguments. My clients appreciate that. Okay. The case will be submitted.